UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                    :
UNITED STATES OF AMERICA,                                           :
                                                                    :
                                        Plaintiff,                  :          23-CR-133-5 (JMF)
                                                                    :
                    -v-                                             :
                                                                    :          MEMORANDUM OPINION
SKYE XU,                                                            :              AND ORDER
                                                                    :
                                        Defendant.                  :
                                                                    :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

     Defendant Skye Xu, the owner and operator of Sky X Airlines, LLC, is charged in this

case with participating in an alleged kickback scheme that, over more than ten years, defrauded

Polar Air Cargo Worldwide, Inc. ("Polar") of millions of dollars. The events described in the

indictment were initially uncovered through an internal investigation conducted by Polar's

outside counsel, Cravath, Swaine & Moore LLP ("Cravath"), after which Cravath relayed certain

findings and materials to the United States Attorney's Office for the Southern District of New

York. The case was indicted in March 2023. *See* ECF No. 3. Trial is scheduled to begin on

October 28, 2024, as it has been since May 4, 2023. *See* ECF No. 71, at 19-21.

     On September 13, 2024, just over six weeks before trial, Xu filed a letter-motion seeking

approval, pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, to serve pretrial

subpoenas on Polar and Cravath seeking certain documents and communications relating to Xu

and others alleged to be involved in the charged scheme. *See* ECF No. 326 ("Xu Subpoena

Letter Mot."). On October 2, 2024, the Court denied that motion in a "bottom-line" Order "for

reasons to be stated in an opinion to follow." ECF No. 373. Over the next two days, Xu filed a

pair of new motions, one seeking discovery from Cravath and Polar on the ground that they are

part of the "prosecution team," ECF Nos. 377, and a second seeking a three-month adjournment

of the trial date, ECF No. 379.  Four days later, the Government moved to quash the Rule 17(c)

subpoenas that Xu had served on Patricia Filimaua, wife of Frank Filimaua (an anticipated

Government witness), and Jonathan Rosen, counsel to Frank Filimaua; and sought an order

requiring Xu to provide a proffer regarding the relevance and admissibility of any testimony that

he apparently intends to elicit from Rosen and a Cravath lawyer.  *See* ECF No. 385 ("Gov't Mot.

to Quash").[1]  All three of these motions are now fully submitted.  *See* ECF Nos. 388, 397, 399.

## XU'S MOTIONS TO COMPEL AND TO ADJOURN TRIAL

Xu's motions to compel discovery from Cravath and Polar and to adjourn the trial are

both DENIED for reasons to be explained more fully in another opinion to follow.  In brief, Xu

could have and should have sought this relief sooner, as he has been on notice for well over a

year about the nature and significance of Cravath's internal investigation and his explanations for

waiting until the eve of trial to raise the issue are unpersuasive.  But even if his request were

timely, Xu does not cite — and "th[is] Court cannot find" — a decision by any court "applying

the 'joint investigation' analysis to a private party," *United States v. Hwa*, No. 18-CR-538

(MKB), 2021 WL 11723583, at *55 (E.D.N.Y. Sept. 3, 2021), and the facts of this case do not

call for taking that unprecedented step.  Because Xu cannot establish that either Cravath or Polar

was a member of the prosecution team, the Government had no obligation to seek evidence from

them (or to secure its preservation).  *See, e.g.*, *United States v. Thomas*, 981 F. Supp. 2d 229, 239

(S.D.N.Y. 2013) ("*Brady* . . . does not require the Government to seek out . . . information like a

private investigator and . . . deliver[] it to opposing counsel." (internal quotation marks omitted)).

---

[1]     Frank Filimaua and Patricia Filimaua filed letters joining the Government's motion to
quash the Rule 17(c) subpoenas and (in Mr. Filimaua's case) to compel the defense to provide a
proffer with respect to Rosen's testimony.  *See* ECF Nos. 387, 400.

Finally, Xu's request for an adjournment is premised exclusively on the assumption that he is

entitled to discovery from Cravath and Polar.  It follows that there is no basis to adjourn the trial.

### XU'S RULE 17(C) MOTION AND THE GOVERNMENT'S MOTION TO QUASH

Under Rule 17(c), "[a] subpoena may order a witness to produce any books, papers,

documents, data," or other designated objects.  Fed. R. Crim. P. 17(c)(1).  But Rule 17(c) "was

not intended to provide an additional means of discovery" for a criminal defendant, *Bowman

Dairy Co. v. United States*, 341 U.S. 214, 220 (1951), and thus may not be used to conduct a

"general fishing expedition," *United States v. Nixon*, 418 U.S. 683, 700 (1974) (internal

quotation marks omitted).  Instead, a Rule 17(c) subpoena "may be used only to obtain materials

admissible as evidence at trial."  *United States v. Louis*, 04-CR-203 (LTS), 2005 WL 180885, at

*3 (S.D.N.Y. Jan. 27, 2005).  More specifically, to obtain leave to serve a pretrial subpoena

under Rule 17(c), a defendant "must clear three hurdles: (1) relevancy; (2) admissibility; [and]

(3) specificity."  *Nixon*, 418 U.S. at 700; *accord United States v. Avenatti*, No. 19-CR-373

(PGG), 2020 WL 86768, at *4 (S.D.N.Y. Jan. 6, 2020).

### A.  Xu's Motion to Serve Rule 17(c) Subpoenas on Polar and Cravath

Xu's request to serve Rule 17(c) subpoenas on Polar and Cravath failed to clear any of

these hurdles.  First, as to specificity, the subpoenas' requests for documents were "virtually

limitless in scope."  ECF No. 354 ("Gov't Opp'n"), at 5.  Xu's proposed subpoenas asked for

"all documents and communications exchanged between [the subpoena recipient] and the

government" that "relat[e] to" Xu and others, and even documents "relating to" any of those

communications.  ECF No. 326-1, at 7.  Although Xu argued that his proposed subpoenas were

nonetheless specific because he provided examples of documents that would be responsive, *see*

ECF No. 367 ("Xu Reply Mem."), at 2, 5, the requested materials extended far beyond the few

documents that he specifically identified (which did not even appear in the subpoenas themselves). "Subpoenas seeking any and all materials, without mention of specific admissible evidence," are precisely what "justify the inference that the defense is engaging in the type of fishing expedition prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (internal quotation marks omitted).

That was reason enough to deny Xu's Rule 17(c) motion. But he also failed to show the subpoenas were limited to relevant and admissible materials. For one thing, because the proposed subpoenas were so broad, there was "no meaningful way to evaluate the relevance or admissibility of the unspecified evidence that would theoretically be responsive." Gov't Opp'n 8. But separate and apart from that, Xu's proposed subpoenas plainly swept in a host of irrelevant and inadmissible materials, including, among other things, (1) materials protected by the attorney-client privilege or work-product doctrine, *see* ECF No. 326-3 (requesting "all documents and communications . . . *relating to* documents and communications between [Cravath] and the government" (emphasis added)); Xu Reply Mem. 4 (acknowledging that the subpoenas sought communications between Cravath and Polar that were "undisclosed" to the Government),; *see also* ECF No. 358, at 5; *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530-32 (S.D.N.Y. 2015) (discussing the scope of the attorney-client privilege and work-product doctrine in the context of internal investigations); (2) materials sought only for purposes of impeachment, *see* Xu Subpoena Letter-Mot. 3 (describing documents as having "obvious impeachment value"); *see also United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Courts have consistently interpreted . . . Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment."); and (3) prior "statement[s] of a witness or of a prospective witness," which are (at least if possessed by the Government, as

many appear to be here) explicitly excluded from Rule 17(c)'s scope, Fed. R. Crim. P. 17(h); *compare United States v. Goldstein*, No. 21-CR-550 (DC), 2023 WL 3662971, at *5-6 (E.D.N.Y. May 25, 2023) (Chin, J.) (holding that Rule 17(h) "operates to prevent discovery only of statements in the possession of the Government"), *with United States v. Yudong Zhu*, No. 13-CR-761 (VM), 2014 WL 5366107, at *3 (S.D.N.Y. Oct. 14, 2014) (taking a broader view of Rule 17(h)).

For these reasons, Xu's motion to serve Rule 17(c) subpoenas on Cravath and Polar was denied.[2]

## B.  The Government's Motion to Quash

For similar reasons, the Government's motion to quash must be and is granted.  In fact, if anything, Xu's justification for the Rule 17(c) subpoenas he served on Ms. Filimaua and Rosen is even weaker than his justification for the subpoenas he sought as to Polar and Cravath.

First, these subpoenas also call for the production of "any" and "all" documents and communications relating to broad topic areas, using sweeping language that courts have repeatedly rejected as enabling impermissible fishing expeditions.  *See, e.g.*, ECF No. 385-2 ("Rosen Subpoena"), at 7-8; *see also Mendinueta-Ibarro*, 956 F. Supp. 2d at 513; *United States v. Bergstein*, No. 16-CR-746 (PKC), 2018 WL 9539856, at *2 (S.D.N.Y. January 22, 2018).[3]

---

[2]    Xu raised his "prosecution team" argument for the first time in his reply in support of his motion to serve the Rule 17(c) subpoenas.  *See* Xu Reply Mem. 1.  It is well established that a party may not raise new arguments in a reply.  *See, e.g.*, *United States v. Fernandez*, No. 17-CR-167 (JMF), 2017 WL 6372783, at *1 n.2 (S.D.N.Y. Dec. 12, 2017).  In any event, the argument is fleshed out in Xu's subsequent motion to compel.  *See* ECF No. 377.  Accordingly, the Court will address it in the opinion to follow explaining the denial of that motion.

[3]    Although the subpoena served on Rosen states that it seeks documents "including but not limited to" two specific categories — materials referenced in an email sent to the Government and records relating to foreign travel, *see* Rosen Subpoena 7 — an overly broad subpoena is not cured by its inclusion of a narrower category of materials that could potentially be the subject of

For example, the subpoena served on Ms. Filimaua calls for production of *all* of her bank records over a twenty-one-year period (many of which the Government has already produced) and records of *any* deposits exceeding $10,000 made into her account over that same period — a universe that would plainly encompass a broad sweep of irrelevant private information.  *See* ECF No. 385-4, at 5.  Similarly, the subpoena served on Rosen seeks "all" communications between Rosen, on the one hand, and the Government, Cravath, and Polar, on the other, relating to his representation of Mr. Filimaua.  *See* Rosen Subpoena 8.  These requests are plainly "overly broad" and, thus, the kind of "fishing expedition" that Rule 17(c) does not permit.  *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (summary order).

Second, and in any event, Xu fails to establish that the subpoenas served on  Ms. Filimaua and Rosen call for relevant and admissible materials.  Once again, that is true merely given the sheer breadth of the subpoenas.  For instance, Xu cannot argue with a straight face that Ms. Filimaua's bank records for a twenty-one-year period — six of which predate the time period covered by the Indictment — would be relevant and admissible.  Nor can, or does, Xu argue that all of the communications he seeks in the two subpoenas would be admissible under the rules governing hearsay.  *See* Fed. R. Evid. 801-807; *see also, e.g.*, *United States v. Mendlowitz*, 17-CR-248 (VSB), 2019 WL 6977120, at *9 (S.D.N.Y. Dec. 20, 2019) ("The proponent of a hearsay statement bears the burden of demonstrating its admissibility").

Finally, Xu's subpoenas to Ms. Filimaua and Rosen, like his proposed subpoenas to Polar and Cravath, plainly call for a host of (1) materials protected by the attorney-client privilege or work-product doctrine, *see* ECF No. 387, at 1-2; and (2) materials sought only for purposes of

---

a more carefully tailored request.  Moreover, even those narrower requests would also suffer from separate, and independently fatal infirmities discussed below.

impeachment, *see* ECF No. 399 ("Xu Opp'n"), at 5.[4]  As discussed, neither category of documents is available pursuant to Rule 17(c).  Although Xu insists that the materials he seeks are not privileged because they were disclosed to the Government, *see* Xu Opp'n 7, his subpoenas plainly encompass both privileged and non-privileged materials.  *See* Rosen Subpoena 4 (requesting "all documents and communications exchanged between [Rosen] and Cravath or Polar . . . in connection with [his] representation of [] Filimaua," without regard for whether they have been disclosed to the Government).[5]  And although Xu argues that *Nixon* creates only a "general rule" — which this Court can ignore — that materials needed for impeachment are not the proper subject of a Rule 17(c) subpoena, *see* Xu Opp'n 5, he fails to acknowledge the decades of cases in this Circuit reiterating, and indeed strengthening, that rule, *see, e.g.*, *United States v. Constantine*, 21-CR-530 (SHS), 2023 WL 3045408 (S.D.N.Y. April 21, 2023); *United States v. Giampa*, 92-CR-437 (PKL), 1992 WL 296440 (S.D.N.Y. Oct. 7, 1992).

In short, the Government's motion to quash the Rule 17(c) subpoenas served on Ms. Filimaua and Rosen is GRANTED.  Further, Xu may not serve any additional Rule 17(c) subpoenas absent leave of Court obtained pursuant to motion.  *See* ECF No. 386 (first citing *United States v. Boyle*, No. 08-CR-523 (CM), 2009 WL 484436, at *3 (S.D.N.Y. Feb. 24, 2009); then citing *United States v. Weissman*, No. 01-CR-529 (BSJ), 2002 WL 1467845, at *1 (S.D.N.Y. July 8, 2002)).  Finally, to the extent that the Government seeks a proffer regarding

---

[4]     As Ms. Filimaua notes in her letter joining the Government's motion to quash, filed earlier today, many of the requested documents are also likely to be protected by the marital communications privilege.  *See* ECF No. 400, at 1-2.  That said, the Court need not and does not rely on that argument in granting the Government's motion, as Xu has not yet had an opportunity to respond to it.

[5]     Moreover, the Government represents that it has produced any materials in its possession. In that regard, the only materials subject to the subpoena that are not already in Xu's possession are likely to be protected by the attorney-client privilege or work-product doctrine.

the relevance and admissibility of any testimony that Xu intends to elicit from Rosen and the Cravath lawyer, *see* Gov't Mot. to Quash 10, the motion is GRANTED, except that Xu may make the proffer, at least in the first instance, *ex parte* to avoid disclosing his defense strategy to the Government, *see* Xu Opp'n 7. Xu shall make a detailed proffer no later than **October 23, 2024**.

**MOTIONS TO SEAL**

One housekeeping issue remains. Both Xu and the Government have supported their motions with exhibits filed under seal. Xu sought leave to do so, *see* ECF Nos. 368, 378; despite the Court's Individual Rules and Practices (not to mention the law regarding public access to judicial documents), the Government neglected to do so, *see* ECF No. 388-1. The Court is inclined to unseal all of these exhibits in their entirety because the Government has not requested leave to seal them, let alone justified doing so, and the only basis for sealing raised in Xu's letter-motions is that "the Government designated [the exhibits] . . . as either 'Confidential' or 'Sealed Material'" under the parties' Protective Order, *see* ECF No. 64, which is not a valid basis for sealing, *see, e.g.*, *United States v. Wells Fargo Bank N.A.*, No. 12-CV-7527 (JMF), 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015) (citing cases). If the Government believes that the exhibits should remain sealed or should be publicly filed with redactions, it shall, no later than **October 18, 2024**, file a letter-motion, not to exceed three pages, showing why doing so is consistent with the presumption in favor of public access to judicial documents. *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). If no such letter-motion is filed, the exhibits will be unsealed without further notice to the parties.

## CONCLUSION

For the reasons stated above, Xu's letter-motion seeking leave to serve Rule 17(c) subpoenas on Polar and Cravath was denied and the Government's motion to quash the Rule 17(c) subpoenas served on Patricia Filimaua and Jonathan Rosen is granted. Further, for reasons to be explained further in a forthcoming opinion, Xu's motion to compel discovery from Cravath and Polar and his motion for a three-month adjournment of the trial date are both denied. Finally, Xu is ordered to make an *ex parte* proffer regarding the relevance and admissibility of any testimony that he intends to elicit from Rosen and the Cravath lawyer by **October 23, 2024**, and the Government is ordered to file any letter-motion to maintain documents currently sealed in that form (or with narrowly tailored redactions) by **October 18, 2024**.

The Clerk of Court is directed to terminate ECF Nos. 368, 377, 378, 379, 385, and 400.

SO ORDERED.

Dated: October 16, 2024
New York, New York

_____
JESSE M. FURMAN
United States District Judge